MORRISON *v.* STATE.

Crim. 3934

Opinion delivered September 23, 1935.

*Jack M. Bowman, O. D. Longstreth* and *John R. Thompson,* for appellants.

*Carl E. Bailey,* Attorney General, and *Guy E. Williams,* Assistant, for appellee.

SMITH, J. Appellants were convicted of violating § 2668, Crawford & Moses' Digest, and have appealed. This section of the statute provides that any person who shall sell, vend, or otherwise dispose of any lottery ticket, gift concert ticket, or like device, shall, on conviction thereof, be fined in any sum not less than fifty dollars nor more than five hundred dollars.

There is no question about the guilt of appellants if the testimony of a former mayor of the city and the chief of detectives of the city police department is to be credited. The chief of detectives testified that he kept noticing every afternoon that an automobile loaded with negro men drove over the Broadway Bridge from the city of Little Rock to the city of North Little Rock, and about an hour later the automobile would return with the same passengers. The witness stopped the car on one of these trips, and found that it contained all the paraphernalia used in the operation of a lottery known as the policy racket, except only the balls used in drawing the numbers. The witness described how this lottery or racket was conducted.

The witness arrested five negro men, and held them in custody until the following morning, when appellant Morrison called and demanded the release of the men and of his car in which the men were riding when arrested. He stated that these negroes were selling lottery tickets for him, and he demanded their release upon the ground that negroes employed by John Hardin, who was his competitor in the policy racket, had not been arrested or disturbed. Morrison stated to the chief of detectives that if his men were not released he would go to the mayor and have the chief discharged.

The defendant Neely admitted to the chief that he was engaged in selling lottery tickets for his codefendant, Morrison.

The ex-mayor testified that Morrison came to him about having his employees released, and, in the course of the conversation, stated that he was being persecuted, in that his employees were arrested while those of his competitor were not disturbed.

The recital of this testimony disposes of the contention that the evidence was insufficient to support the conviction.

It is insisted that the testimony of the mayor and chief of detectives should be disregarded, because no showing was made that the alleged confessions were free and voluntary. Both Morrison and Neely denied making any admission of guilt.

We think the testimony was competent. If the confessions were made, they were free and voluntary; in fact, Morrison sought the interview with both the mayor and the chief of detectives.

It is, of course, competent to prove the declarations of an accused against his interest, and it is not required that it be first shown that the declarations were freely and voluntarily made.

In the case of *Davis* v. *State,* 182 Ark. 130, 30 S. W. (2d) 830, it was said: "The practice in such cases has been defined in numerous decisions of this court. It is to this effect. When testimony in the nature of a confession is offered, the accused has the right to object to its admission, upon the ground that the alleged confession was not voluntarily made, in which event the trial court should hear testimony as to the circumstances under which the alleged confession was made, and should exclude the confession if it was not voluntarily made. If the testimony is conflicting on that question, the jury should be told to disregard the alleged confession unless they found that it was, in fact, voluntarily made; but, if it appeared to have been voluntarily made, to consider it in connection with all the other evidence in the case."

No suggestion was made, when the testimony as to the admissions was offered, that they were not freely made, and the court was not therefore required to hear testimony on that issue.

It was also said in the Davis case, *supra,* that statements in the nature of a confession are not to be excluded for the reason only that they were made to an officer having the accused in custody, and, when voluntarily made the officer may testify what they were.

The only question in the case which gives us any concern is the ruling of the court in requiring the defendant, Morrison, when testifying in his own behalf, to answer how many times he had been arrested.

In the case of *Kennedy* v. *Quinn,* 166 Ark. 516, 266 S. W. 462, it was said: "We have frequently and recently decided that a witness cannot be interrogated on his cross-examination for purpose of impeachment concerning indictments or mere accusations of crime. He

may be asked if he was guilty or was convicted, but he cannot be asked if he was indicted or accused.'' (Citing cases.)

It is therefore not proper, ordinarily, to ask a witness, on his cross-examination, whether he has been arrested for the commission of a crime. Such a question was held, however, not to be error in the case of *Smith* v. *State*, 183 Ark. 100, 34 S. W. (2d) 1083. But in that case home brew, an intoxicating liquor, was found in the home of appellant, who denied having made it. The State was attempting to show that the accused was in that business, and that having the brew in his possession was a part of the business in which the accused was engaged, and it was there held that it was not incompetent to show that the home where the liquor was found had been raided a number of times by officers and the accused arrested during these raids. The admission of this testimony in that case, which was introduced to show a course of conduct, must be regarded, however, as an exception to the general rule that a witness should not be asked, on his cross-examination, if he had been accused or arrested.

While we think this testimony was not competent in the instant case, we do not think its admission was error calling for the reversal of the judgment. The witness explained fully that, while he had been twice arrested, neither arrest had any relation to the offense charged in the indictment. He stated that both arrests were unjust, and that both were dismissed without a trial. His answer to these collateral questions was, of course, conclusive of that inquiry.

There appears to have been no prejudicial error, and the judgment will therefore be affirmed. It is so ordered.