JOHNSON *v.* STATE.

5082 370 S. W. 2d 610

Opinion delivered September 23, 1963.

*Felver A. Rowell, Jr.,* for appellant.

*Bruce Bennett,* Atty. General, by *Leslie Evits,* Chief Asst. Atty. Gen., for appellee.

SAM ROBINSON, Associate Justice. Appellant was convicted of the crime of forgery, sentenced to five years in the penitentiary, and has appealed.

First, appellant argues that the trial court should have granted his motion for a mistrial because of the method used by the prosecuting attorney in cross-examining the defendant about the commission of other offenses. When the defendant takes the stand, as in the case at bar, he is subject to the same rules of evidence as other witnesses, and for the purpose of throwing light on his credibility, he may, in good faith, be asked about other crimes he may have committed and other convictions, but he cannot be asked if he has been charged, indicted, or accused of other crimes. *Sullivan* v. *State,* 171 Ark. 768, 286 S. W. 939; *Mathis* v. *State,* 191 Ark. 1053, 89 S. W. 2d 599; *Morrison* v. *State,* 191 Ark. 720, 87 S. W. 2d 50; *Kennedy* v. *Quinn,* 166 Ark. 509, 266 S. W. 462.

If the defendant denies that he has committed other crimes he cannot be impeached by showing that he has given false answers. *Montague* v. *State,* 213 Ark. 575, 211 S. W. 2d 879. Here, the defendant was asked on cross-examination about other convictions which he readily admitted, but he denied other crimes for which apparently there had been no trial or conviction. The prosecuting attorney asked the defendant specifically if he had cashed a check in Lucille Brent's Cafe. He answered "no". The prosecuting attorney then said: "I ask the Court's indulgence. I sent after some records and they will be here in just a minute."

The prosecuting attorney then proceeded to question the accused about other check writing offenses. The record is not exactly clear at this point as to whether the State's attorney was using the alleged records in such manner as to lead the jury to believe that he was examining the accused from official records of charges against him, but apparently this was being done. The attorney for appellant then stated that if other records were to be introduced, he would like to discuss the matter in chambers. Finally, the Court and counsel retired to chambers and there, in the course of the discussion, the prosecuting attorney said: "I, at the time of this objection, am doing nothing more or less than looking at old information sheets with which the man was charged, specific checks and the specific name . . .". The Court then asked: "Are these convictions according to the witness?" The prosecuting attorney replied: "They are charges." The Court sustained the defendant's objection, but did not grant the motion for a mistrial.

In view of the fact that the cause is being reversed on the question of the sufficiency of the evidence, we do not deem it necessary to rule on the above assignment of error any more than to point out that although it is proper for the State's attorney, in good faith, to ask the defendant on cross-examination about the commission of, or the conviction for, other offenses, he should not attempt to get before the jury in an indirect way, or other-

wise, the fact that the defendant has been charged, indicted, or accused of other crimes.

The appellant was charged by felony information with forging the name of James Odam to a check drawn on the Morrilton Security Bank in the sum of $38.00. Billy F. Davidson, Assistant Cashier of the First State Bank (not the Morrilton Security Bank on which the check was drawn) was called by the State as a witness regarding the alleged forged check. The name of James Odam appeared on the check as maker and the name James Payne appeared on the back of the check as endorser. The witness, Mr. Davidson, testified:

"Q. At this time I hand you a check dated October 19, 1962, and ask you if you can, how it came into your hands originally?

A. Well, that's the one thing I can't tell you, how it got into our bank. Presumably, someone cashed it at the window, but who, we don't know, but its possible it came to us on a deposit and they didn't put a stamp on it or write their name on it."

The witness then testified that the check was forwarded to the Morrilton Security Bank and was returned by that bank with the notation "Sig. Inf." written in pencil at the end of the name of the endorser on the back of the check. The witness further testified that the notation on the back of the check along side the endorsement means, in banking circles, that the signature does not correspond; that the known signature at the bank does not correspond with the signature on the check. He further testified: "We get them quite often, but not too often, occasionally." The witness then stated that they (the bank) wrote to James Payne, whose name appeared on the check as endorser. The State attempted to prove by the witness what James Payne said, but, of course, such evidence was excluded by the Court as hearsay.

The State produced as a witness Dr. Orlando W. Stephenson, who testified as an expert, and said, in effect, that the defendant—appellant Johnson, had written the check in question, but apparently, to reach that con-

clusion it required about 30 days work on the part of the witness in comparing the handwriting on the check with known specimens of Johnson's writing.

Other than the testimony of Dr. Stephenson, there is no competent evidence in the record that the defendant signed the name of James Odam on the check, and there is absolutely no evidence that James Odam's name was forged. In order to constitute the offense of forgery it is necessary that there be an intent to defraud. *Ferrell* v. *State,* 165 Ark. 541, 265 S. W. 62; *Rickman* v. *State,* 135 Ark. 298, 205 S. W. 711. Of course, if one has permission to sign another's name to the instrument in question, there could be no forgery.

Although the circumstantial evidence shows that there is such a person as James Odam who has a checking account at the Morrilton Security Bank, Odam was not called as a witness, and neither was anyone from the bank on which the check was drawn. The mere fact that one person signs another person's name on a check or other instrument does not necessarily mean that a forgery has been committed.

Whether Odam authorized someone else to sign his name could have been proved very easily by calling him as a witness. There is nothing in the record indicating that he was not available as a witness, and certainly someone could have been called from the bank on which the check was drawn and Odam's signature card could have been produced or its absence explained. It does not appear that Dr. Stephenson ever examined a signature of Odam known to be genuine. It might be asked why did the defendant not do these things. The answer is that the burden was on the State to prove the defendant guilty, the burden was not on the defendant to prove his innocence.

The evidence is not sufficient to support the verdict, but the case does not appear to have been fully developed; therefore, the cause is reversed and remanded for a new trial. *Poole* v. *State,* 234 Ark. 593, 353 S. W. 2d 359; *Anderson* v. *State,* 226 Ark. 498, 290 S. W. 2d 846; *Grigson* v. *State,* 221 Ark. 14, 251 S. W. 2d 1021.