SHARP *v.* STATE.

Opinion delivered January 16, 1928.

1. GRAND JURY—WITNESS PROPERLY EXCUSED WHEN.—Under Crawford & Moses' Dig., § 6366, it was not error to excuse and substitute another for a grand juror, who was a witness for defendant, when the latter's case was before the grand jury.

2. INDICTMENT AND INFORMATION—MOTION TO QUASH INDICTMENT.—Where, on the day set for the trial of a criminal case, a motion was made to quash the indictment on the ground that it was returned through coercion, the motion was properly overruled where no diligence was shown to have the grand jurors present to testify in support of the motion.

3. HOMICIDE—ADMISSIBILITY OF EVIDENCE.—In a murder trial, it was error to exclude the testimony of a justice of the peace, contradicting that of the sheriff, as to what the defendant said as to the shooting, on the ground that the justice could not remember whether the sheriff was present at the time, where other witnesses testified that the sheriff was present and that the defendant made the statement to him.

4. CRIMINAL LAW—EXCLUSION OF EVIDENCE—PREJUDICE.—In a murder trial, excluded testimony of a justice of the peace contradicting that of the sheriff as to how the defendant said that the shooting occurred, was not merely cumulative, though he would have been fourth to testify on such point, in view of his long residence and standing in the community.

5. HOMICIDE—EXCLUSION OF TESTIMONY—PREJUDICE.—Exclusion of the testimony of a justice of the peace, contradicting that of the sheriff in a murder trial, as to how defendant said that the

shooting occurred, was not prejudicial to defendant, where his own testimony showed that he voluntarily entered into the affray.

6. CRIMINAL LAW—CHARGE TO GRAND JURY—FAILURE TO OBJECT.— Where defendant did not object to the court's instruction to the grand jury in the presence and hearing of three members of the petit jury which tried defendant, at the time when such petit jurors were examined as to their qualifications, he estopped himself from afterwards making such objection.

7. CRIMINAL LAW—IMPEACHMENT OF WITNESS.—In a murder trial, admission of testimony on cross-examination of a witness who had testified as to deceased's bad reputation, that he had heard, but did not believe, that the man who accused deceased of killing certain persons made affidavit that defendant employed him to make such statements, *held* not reversible error because defendant's reputation had not been put in issue, such testimony being admissible to test the witness' credibility.

8. HOMICIDE—SUFFICIENCY OF EVIDENCE.—Evidence *held* sufficient to sustain a conviction of involuntary manslaughter.

9. HOMICIDE—SELF-DEFENSE.—Where defendant armed himself and went to a place where deceased and his companions would necessarily, pass, this amounted to a voluntary entry into conflict, and precluded him from pleading self-defense, though he testified that he did not open fire until they leveled their guns upon him.

10. HOMICIDE—PREJUDICE.—One cannot complain of being convicted of a lower degree of homicide than the evidence warranted.

Appeal from Ashley Circuit Court; *Turner Butler*, Judge; affirmed.

*Compere & Compere*, for appellant.

*H. W. Applegate*, Attorney General, and *Darden Moose*, Assistant, for appellee.

HUMPHREYS, J. Appellant was indicted in the circuit court of Ashley County for the crime of murder in the first degree for shooting and killing Bill Jones, on May 23, 1927, who was passing his premises in an automobile, in company with Roy Robbins, Lee Robbins and Bank Norrell. Bill Crow Sharp, son of appellant, and Boss Jordan were with appellant when the killing occurred, and all three were indicted for the crime. Appellant interposed the plea of self-defense to the charge, and, on the trial of the cause, was convicted of involuntary manslaughter, and, as a punishment therefor, was

adjudged to serve a term of one year in the State Penitentiary, from which is this appeal.

Appellant has assigned as reversible error the action of the trial court in temporarily excusing Jim Wilcoxson, a regular grand juror, from the grand jury, when appellant's case was before said grand jury for investigation and consideration, and in summoning another to serve in his place. Jim Wilcoxson was excused on the motion of employed attorney for the State because he was a witness for appellant. Section 6366 of Crawford & Moses' Digest provides that the trial court may excuse for good cause any who are not competent jurymen. Certainly a witness for one whose case is being investigated by the grand jury is not a competent juror. The court did not commit reversible error in substituting another to serve in the place of Wilcoxson.

Appellant also assigns as reversible error the refusal of the court to quash the indictment at his request on the alleged ground that it was returned through coercion, and not voluntarily. This motion was made on the day the case was set for trial, and the members of the grand jury had not been subpoenaed to testify in support of the motion, and were not present so that they might be called without delaying the trial of the cause. The court refused to delay the trial in order that the grand jurors might be subpoenaed to appear and testify relative to the charge of coercion. As no diligence was shown to have the jurymen present, the court was warranted in treating the motion as dilatory.

Appellant also assigns as reversible error the refusal of the court to allow D. A. Pearson, a justice of the peace, to tell how appellant said the shooting occurred, in contradiction of the testimony of J. C. Riley, the sheriff, who testified that, when he reached the scene of the tragedy, he asked appellant if Jones and those with him were trying to kill him when he shot at them, and he said "No"; that he then asked him if they had their guns raised to shoot at the time he shot at them, and he said, "No," that, G—— damn them, he did not give them a

chance; that he then asked him if he would shoot a man who was not trying to kill him, and he said, well, he figured that he had to kill them, and that this was the best chance he would ever have.

Appellant offered to prove by D. A. Pearson that he would say, if allowed to answer, that appellant said that, before he fired at Norrell and Jones, Norrell had raised his gun to fire, and that Jones was trying to get his gun up, but was having trouble getting it around because the barrel hit the top of the car; and that appellant did not say that they did not give him a chance, and that he thought that he would have to kill them some time, and that this would be about the best chance he would ever get.

The court excluded the testimony of Pearson because he would not state that J. C. Riley was present when he heard appellant make the statement. Three other witnesses testified that Pearson was present when appellant told Riley how the shooting occurred. One was Jordan, jointly indicted with appellant. Another was Pugh, who was sick, and testified by deposition. The third was Peck Watson. None of these were officers. All three contradicted the sheriff relative to the statement he said appellant made to him as to how the killing occurred. It was error to exclude Pearson's testimony, either upon the ground that Pearson could not remember whether Riley was present when appellant made the statement, or because it was cumulative. Other witnesses testified that Riley was present, and that appellant was addressing himself to Riley when he made the statement. If Pearson had been permitted to testify, he would have been the fourth to testify on that point, but we do not regard the testimony as merely cumulative. Pearson was an officer who had lived for sixteen years in the community, and, on account of his standing, much weight might have been accorded his statement. Touching upon this point, it was suggested by the court, in the case of *Sheppard* v. *State,* 120 Ark. 160, 179 S. W. 168, that the testimony of a witness whose standing would have carried more weight than that of others should be admitted.

Although error to exclude Pearson's testimony, appellant suffered no prejudice on account of the exclusion thereof, for the reason that, according to his own statement, he voluntarily entered into the shooting affray, and therefore he cannot avail himself of the claim that he shot Jones in necessary self-defense. Appellant testified that, after hearing that Jones and Norrell had threatened to kill him, and after being informed that they passed his premises with their guns, en route to a small village the other side of their home, he armed himself and took his station at the little tenement house on his premises near the road by which the deceased would return, for the purpose of defending himself in case he was attacked. It was unnecessary for his protection that he go down by the roadside, armed, where deceased would probably pass on his return. He could easily have avoided the difficulty by remaining at his own residence, which was, in the eye of the law, his castle. It would not have been a cowardly act to do so. He could have defended himself there as well, if not better, than on the roadside, had they attempted to take his life.

Appellant also assigns as reversible error certain remarks made by the court in instructing the jury that indicted him, which remarks were made in the presence and hearing of N. T. Watson, Eugene Bunn and J. R. Hester, who were members of the petit jury who tried him. It is unnecessary to set out that portion of the charge of the court now objected to. The objection was not made when the petit jurors were examined touching their qualifications. That was the time for appellant to have spoken, and, not having done so, he estopped himself from afterwards making the objection.

Appellant also assigns as reversible error the admission of certain testimony of Peck Watson, on the ground that appellant's reputation had not been put in issue. The interrogatory and answer are as follows:

"Q. You know, too, that the man who accused Bill Jones and Bank Norrell of the killing of Sam Meeks

made an affidavit that this defendant, T. J. Sharp, employed him to make that statement and swear that these two paid him to kill Sam Meeks, and that he would keep him out of jail if he would swear that? A. I heard it, but did not believe it."

This interrogatory was propounded and answered on cross-examination of Peck Watson, who had testified that the reputations of Bank Norrell and Bill Jones were bad, when he was being questioned as to certain other specific acts when this testimony was developed, and it was admitted for the purpose of testing the credibility of the witness and not for the purpose of attacking the character of appellant.

Appellant also assigns as reversible error the action of the court in modifying his requested instruction G, by striking out the word "home" and inserting the word "premises." The court's action was correct. The undisputed proof showed that appellant was at a tenement house on his premises and not at his own home when the shooting occurred. The amendment had the effect of conforming the instruction to the undisputed proof.

Appellant next assigns as reversible error the insufficiency of the evidence to sustain the verdict. According to the evidence of the State's witnesses, appellant was guilty of murder in the first degree. They testify, in substance, that appellant opened fire upon Bill Jones and his companions, who were passing a tenement house on appellant's premises in an automobile, and continued to shoot at them until he had killed Bill Jones and wounded two others. Their testimony was to the effect that no attempt was made by Bill Jones and his companions to assault appellant before he began to shoot at them. Appellant admitted receiving information that they had threatened to kill him and had gone by his house on the way to a small village with guns in their car, and that he armed himself and took a station near the roadside at one of his tenement houses. It is true that he testified that he did not open fire until they had leveled

their guns at him, but his action in arming himself and going to a place where they would necessarily pass upon their return amounted to voluntarily entering into the conflict, and precluded him from pleading self-defense to the charge.

Learned counsel argue that the testimony showed that he was either guilty of murder in the first degree or nothing. This court has often ruled that one cannot complain of being convicted of a lower degree of homicide than the evidence warrants. *Price* v. *State*, 82 Ark. 25, 100 S. W. 74; *Wilkerson* v. *State*, 105 Ark. 367, 151 S. W. 518; *Freeman* v. *State*, 150 Ark. 387, 234 S. W. 267; *Parker* v. *State*, 169 Ark. 421, 275 S. W. 758.

The judgment is affirmed.

Justices MEHAFFY and McHANEY dissent.